[No. 6,586.—In Bank.]
March 22, 1882.

## FREDERICK P. HOWARD v. PETER DONAHUE.

MONEY HAD AND RECEIVED—TENANTS IN COMMON—OUTSIDE LANDS OF SAN FRANCISCO—ORDER NUMBER 800.—On June 5, 1861, the defendant, then being the claimant of a certain tract of land called the Donahue Tract. part of the lands known as the outside lands of the City and County of San Francisco, by a bargain and sale, deed conveyed an undivided interest therein equal to ten acres to one B., and also interests to others, After the passage of the Act of Congress of March 6, 1866: "To quiet the title to certain lands within the corporate limits of the City of San Francisco," and the act of the Legislature confirming order 'No. 800' of the Board of Supervisors of San Francisco, the defendant caused the Donahue Tract to be delineated upon the map of the outside lands, and paid all the necessary taxes and assessments; and a part of the tract being taken for Golden Gate Park, and an award made therefor, received the amount of the award from the proper officer of the city—except a portion thereof retained by the officer for the purpose of paying the shares of the vendees of defendant other than B., and executed to the city a deed for the land taken. The names of the other vendees appeared upon the map; but neither B. nor any of his grantees, ever had actual possession of any part of the land, or paid any part of the taxes or assessments, or had any thing to do with the delineation of the claim upon the map. Action by an assignee of B. to recover of the defendant the proportion of the money received by him corresponding to B.'s interest in the land.

*Held:* It does not appear that D. took upon himself to act for B.; their relationship as tenants in common did not cast upon him that duty; therefore it does not appear that by any agreement express or implied, or by any obligation, the moneys received by D. were received in whole or in part for or on account of B. or his interest.

APPEAL from an order of Fifteenth District Court of the City and County of San Francisco granting defendant's motion for a new trial. DWINELLE, J.

By the Act of Congress of March 8, 1866, "To quiet the title to certain lands within the corporate limits of the City of San Francisco," the title of the United States to certain lands was relinquished and granted to the City in trust, that the said lands "should be disposed of and conveyed by said City to parties in the *bona fide* actual possession thereof by themselves or tenants on the passage of this Act in such quantities and upon such terms and conditions as the Legislature of the State of California may prescribe," etc.

Afterwards by an order of the Board of Supervisors of San Francisco entitled "Order No. 800," subsequently ratified by the Act of March 27, 1868, it was provided that a portion of the land referred to in the Act of Congress (known as the "outside lands") should be subdivided and a map thereof made, and that any person having or claiming any interest in any portion of said land might have the same delineated on the said map, provided all taxes should have been paid thereon for five fiscal years preceding July 1, 1866.

It was further provided that the lands reserved for public uses should be appraised, and the appraised value assessed upon the other lands delineated on the map; and that upon the payment to the County Treasurer, of the amount thus assessed, the City and County of San Francisco, by the said order, relinquished and granted its title to the lands in the order described, and not excepted or reserved, and upon which should be paid previous to April 1, 1868, the taxes assessed thereon for the five fiscal years preceding July 1, 1866, "unto the person or to the heirs and assigns of persons, who were on the eighth day of March, 1866, in the actual *bona fide* possession thereof by themselves, or their tenants, or having been ousted from such possession before or since said day, have recovered or may recover the same by legal process," and it was declared to be the intent and object of this provision to pass the title of the city and county in and to every tract and portion of the land delineated in said map, (except portions reserved) "possessed by one person unto the possessor thereof in severalty," and to every separate tract and portion thereof (except portions reserved) "possessed by more than one person, jointly or in common, unto the possessors thereof;" and it was further provided that the Board of Supervisors should "provide by order, for the distribution and payment to those entitled thereto, of the moneys assessed for the cost of reservations * * * and paid to the City and County Treasurer," as previously provided.

*Edward J. Pringle*, for Appellants.

The fund collected by the assessment on outside lands was the only provision made for the payment of lands taken for public uses; and the appellant, having shown himself entitled

to his proportion of this fund, has a right, in an action for money had and received, to claim it from the respondent, to whom it was wrongfully paid.

In support of this proposition, we have undertaken to establish that the acts done by the respondents, by virtue of which he received the moneys in question, were not necessarily personal acts, but were such as could be performed by another, and in this case must have been done, and were done, for the appellant, and that he is entitled to claim the benefit of them.

When the legislation for "the settlement and quieting of titles to lands in the City and County of San Francisco" was inaugurated, the lawmakers were familiar with the only precedent in that behalf, viz.: the Act "to ascertain and settle the private land claims in the State of California," passed March 3, 1851. The Act was passed for the purpose of determining the validity or invalidity of the different Mexican grants in the State. Under it, by a number of decisions, two well-settled conclusions had been reached.

First—That the only purpose of the Government was to determine the validity or invalidity of the grant, without considering questions between conflicting owners or claimants. (*Castro* v. *Hendricks*, 23 How. 441; *Estrada* v. *Murphy*, 19 Cal. 274; *Stark* v. *Barrett*, 15 id. 262; *Walbridge* v. *Ellsworth*, 44 id. 355.)

Second—That if the grant is presented by or confirmed to a claimant and who is not justly and equitably entitled to it, he is held as trustee for the true owner, and compelled to convey to him. (*Hardy* v. *Harbin*, 4 Saw. 540; *Salmon* v. *Symonds*, 30 Cal. 301; *Wilson* v. *Castro*, 31 id. 420; *Bludworth* v. *Lake*, 33 id. 263.) This doctrine reached its natural limit in the case of *Pico* v. *Spence*, 21 Cal. 511, where the Court refused to hold the defendant as trustee for the plaintiff, because he had presented a different grant from the one claimed by plaintiff.

Such was the well-settled state of the law under the only precedent which the State afforded for "the settlement and quieting of titles to lands." When the same necessity arose in San Francisco, what was the state of facts? The whole region of outside lands was covered with different possessions,

having a recognized individuality, and known by the names of one or more of their owners or claimants. A glance at the News Letter Map, of 1864 will show how the region was chequered with claims of different shapes and sizes, and designated by different names of owners: Peter Donahue, Donahue, Cohen and others, Meyer & Seligman, M. Ullman, G. Flint, D. W. Perley, Buckley & Sullivan, etc.

For the purpose of showing the relation which these different claims bore to the lands which were to be reserved for streets and public parks, the outside land map was devised. The first purpose of. the map was to divide the whole region into lots and blocks, laying out streets, and exhibiting all the lands to be reserved for public uses. (See §§ 1 and 2 of Order 800.) The next object of the map was to exhibit the different outside land claims. These (by § 4, Order 800) were required to be delineated on the map. All the portions of the different claims which, upon such delineation, came within the lines appropriated to public uses were reserved and became, by the adoption of the map, "absolutely dedicated" to the uses designated on the map. To those portions the title never passed to the claimants, but they became, by the operation of the ordinances under the Act of Congress, "reserved and set apart for public uses." (§ 6.) Yet the equities of the parties were recognized, and provision was made for compensation for the lands reserved for the parks.

Now, it will be seen upon examination of the whole scheme, of which this map was but one feature, that the object of the map was not, as contended by the respondent, to "ascertain and settle" the claimants, but simply to delineate and ascertain the claims. For no names were required to be presented or registered. A map itself is but the proper presentment of claims and not of claimants; of lines and not of titles. No lists were kept of claimants, and yet the different sections of the laws are full of reference to undivided interests, and co-tenants, full of reference to the fact that the claimants will necessarily greatly outnumber the claims delineated. Delineation was to be made by the Committee of the Board. Invitation was given to present a description of the claims during the progress of the preparation of the map, and during thirty days of exhibition after its completion. And yet no

provision is made for changes of claimants during this period.

In the other part of the general scheme, where provision is made for the issuance of deeds to claimants, a notable difference appears. A petition is required to be presented by the claimant, and proofs made by him; an award is made to him, and the award is published for three weeks; and only in case that no opposition is made is a deed issued. These petitions and the proceedings thereon are the true inquest to "ascertain and settle" the titles of claimants, and in these proceedings the delineation of the claim on the map by the claimant is not a condition of the issuance of a deed to him. The reason would very naturally seem to be that the claim, having been once for public purposes delineated on the map, it would be absurd and impossible for each claimant of any interest therein to be required to repeat the delineation.

Such were the two features of the general scheme—a map for the purpose of defining the lands reserved for public uses, a petition, with appropriate proofs, for the purpose of conferring title by deed to the lands not reserved.

Compensation for the lands taken for public uses was to be made, not by a general claim against the city or against the Tax Collector, but by "*distribution* and payment," to the parties entitled, of moneys assessed for that purpose upon the outside lands, (§ 16, Order 800.) The only direct condition for this payment to the person entitled was that his claim should have been delineated on the map, (§ 8.) Section 4 has added indirectly another condition, by providing that "no claim shall be delineated on the map unless all taxes shall have been paid thereon for five fiscal years preceding the year beginning July 1, 1866."

Donahue, being the owner of one of these claims, containing two hundred and ninety-six acres, conveyed an undivided interest of five acres, by deed of grant, bargain, and sale, to Butters, plaintiff's grantor. He made also other deeds of undivided interests. After such conveyance he caused the claim to be delineated on the map, paying, of course, for that purpose the taxes for five years preceding July 1, 1866. He is asked: "You had no intention, as far as you were aware of, of repudiating the

claim of Mr. Butters?" Ans.—"No, sir." "When you put
this Donahue claim on the map, did you intend to repudiate
the deed you had made to Butters?" Ans.—"No, sir; I did
not intend to repudiate that, or others which I had made,
also."

Under this state of facts, without, and *a fortiori* with, this
admission of Donahoe, the plaintiff comes within the general
equities of the Act of Congress and the ordinances.

The possession of Donahue is his possession, both by oper-
ation of law, no ouster being pretended, and by this distinct
recognition of his deed by Donahue. It is unnecessary to
elaborate this point. The presumption in favor of the plaint-
iff arising from the relation of tenancy in common is not
only not overturned, but is strengthened into proof.

The plaintiff therefore is entitled to his proportion of the
moneys collected for, and appropriated to compensation for
lands devoted to public uses, unless the delineation of the
claim on the map, or the payment of taxes be a personal act,
which could be done only by himself.

The respondent's counsel contends—and it is the chief
point of his argument—that they were adversary acts, per-
formed by Donahue in repudiation of his deed; and hence he
is under no allegiance to the plaintiff. But this, as we have
seen, Donahue himself denies. The counsel who now argues
the case did not try it below, and has not caught the spirit
of the trial. An examination of the transcript and of Dona-
hue's evidence (as well what he said as what he forbore to
say) will show that personally his whole defense was that he
had not received the money corresponding to the Butter's
interest; and the great contest in the case was over that point,
which was decided in favor of the plaintiff. For the Court
below found all the facts in favor of the plaintiff, granting a
new trial solely on the ground that the plaintiff had not de-
lineated his claim on the map or paid the taxes.

We submit, therefore, that, under the evidence and findings
of the Court, the delineation on the map and the payment of
taxes were made by Donahue, recognizing and acknowledging
the rights of his vendee and co-tenant, who is thereby entitled
to claim the benefit of those acts.

This proof, it will be seen, goes far beyond the necessities

of the case. For the plaintiff's case is really made out by showing that Donahue stood in such a relation to him that the acts of Donahue enured to his benefit, unless and until Donahue expressly repudiated the deed and the trust that grew out of it.

After the execution of the deed, Donahue sustained the double relation of vendor and tenant in common with the plaintiff; and any acts of delineation on the map and payment of taxes done by him in furtherance of the common title would be for the benefit of the co-tenant. (*Chickering* v. *Faile,* 38 Ill. 345.)

All the equities are in favor of the plaintiff. The defendant got his purchase money at first and then got the compensation money from Austin. It is immaterial by what euphonism we may characterize the position in which the defendant is placed, if he received the moneys appropriated as compensation for the land which he had sold. If the plaintiff was entitled to receive this money from Austin, he may recover it from the defendant.

But it is not open to the defendant to inquire whether the plaintiff can make out a case against the city or not. He is estopped from denying the plaintiff's right.

Respondent, by his deed to the city, surrenders to the city the whole tract included within the park, and obtains from Austin the moneys apportioned thereto, although he had conveyed an interest in said lands to the plaintiff. Of course, this money is paid to him by Austin only because he represented the entire tract. If he had told Austin that he had sold a portion to the plaintiff, Austin would never have paid him plaintiff's share of the money, except under the statement made by him at the trial, that he did not intend to repudiate any of the deeds that he had made. Hence, in law as in fact, he received this portion of the money under the plaintiff's right, or claim of right, and he can not now deny it.

It is well settled that where one co-tenant of a chattel sells the whole chattel and gets the purchase money the other may waive the tort and sue for his share of the money. (*Russell* v. *Russell,* 62 Ala. 48; *Delaney* v. *Root,* 99 Mass. 547; *Dyckman* v. *Valiente,* 42 N. Y. 560; *Field* v. *Bland,* 10 Rep. 116.)

And if such a sale be made of land, the other may still ratify the sale and get his purchase money. Can the vendor in such cases, who has got the purchase money for the property delivered by him, deny the title of his co-tenant ? (*Towne v. Kellogg*, 49 Mo. 118.)

*McAllister & Bergin*, for Respondent.

Title to real estate can not be litigated in a personal action. (*Harlan v. Harlan*, 15 Penn. St. 513; *Halleck v. Mixer*, 16 Cal. 579; *Page v. Fowler*, 28 id. 610; *Kimball v. Lohmas*, 31 id. 157; *Page v. Fowler*, 39 id. 415.) In order to entitle appellant to recover, if the question of title could be litigated in this action, he was bound to show that he was in a position to charge respondent as trustee of the legal title; that is, that by compliance with the provisions of the statute, he had acquired the necessary status to enable him to challenge the holder of the legal title. (*Burrell v. Haw*, 40 Cal. 377; S. C., 48 id. 223; *Sacramento Savings Bank v. Hynes*, 50 id. 202.)

Appellant does not show that he was in possession at the date of the passage of the Act of Congress, on March 8, 1866; that he ever had his claim delineated on the outside land map; that he ever paid the taxes or the outside land assessment, (*Dupond v. Barstow*, 45 Cal. 452–454; *Clark v. San Francisco*, 53 id. 310; *McCreery v. Sawyer*, 52 id. 261.) The moneys received by respondent were by him received to his own use, and no action will lie against him therefor. (*Butterworth v. Gould*, 41 N. Y. 455; *Patrick v. Melcalfe*, 37 id. 332; *Sargent v. Stryker*, 1 Harr. (N. J.) 464; *Munsell v. Lewis*, 4 Hill, 638.)

The fourth section of Order 800 provides, that "any person having or claiming any interest in any portion of said lands under, or by virtue of any of the provisions of this order, may upon the completion of the map, or while the same shall remain in the office of the Clerk of the Board of Supervisors for public inspection, present to the committee on outside lands, a description and diagram of the lands in which he shall so claim an interest, and have the same delineated on said map, but no claim shall be delineated upon said map by said committee, unless all taxes shall have been paid thereon for five fiscal years preceding the year beginning July 1, 1866."

The language of this section would not seem to be open to
doubt; it applies to any person having any interest in any
portion of these lands, and it applies to any person claiming any
portion of these lands. It can scarcely be conceived that any
others could have any interests in these lands than those hav-
ing an interest in them, or those claiming to have an interest
in them. The language would seem to be sufficiently com-
prehensive to include persons of all descriptions who might
have or claim any interest in them. What were these per-
sons to do in order to secure the benefit of title under the or-
dinance? All of these persons, not any one, but all these
persons were required to present to the committee of outside
lands, what? First, a description, and second, a diagram of
the lands in which he shall so claim an interest and have the
same delineated on said map.

These are two distinct requirements exacted of all persons
who would avail themselves of the benefit of the ordinance,
of all persons having any interest in the lands, and of all
persons claiming any interest in the lands. But there was a
still further condition, and that was, that no claim shall be
delineated upon said map by said committee, unless all taxes
shall have been paid thereon for the five fiscal years, and so
forth.

The Court will observe that the condition is that all taxes
upon the claim shall be paid: not that all taxes shall be paid
by any individual on any particular interest, whether in sev-
eralty, in common, or held jointly. All taxes on the claim
must be paid. As to what is a claim, vide *Marshall* v. *Shaf-
ter*, 32 Cal. 191; *Henley* v. *Hotaling*, 41 id. 21. Sections 5,
6, and 7 are not material.

Thus far the Court will observe that the conditions to the
securing of title, under the provisions of the ordinance are,
first, presentation of a description and diagram to the com-
mittee on outside lands; second, to have the lands in which
an interest is claimed, delineated upon the map; third, that
all taxes on the claim, etc., be paid.

Section 8 provides that no person shall be entitled to re-
ceive any compensation for any lot or parcel of land, set
apart for public use, unless his claim shall have been deline-
ated upon the map.

These, however, are not all the conditions compliance with which is necessary in order to secure title. Under Section 10 the Committee on Outside Lands are to make a just appraisement of the lands reserved for public uses, and to make a just and equitable assessment of the value of the lands so reserved, ratably and equitably upon, and to each piece and parcel of land delineated on said map according to the appraised value of said lands.

Section 11 is the one containing the grant. The city, under that section, cedes the title upon what conditions? First, upon the payment to the County Treasurer, of the amount assessed thereon by the Outside Land Committee; second, the payment of taxes, etc.; third, that the persons who were on the eighth of March, 1866, in the actual *bona fide* possession thereof by themselves or tenants, or having been ousted from such possession before or since said day, have recovered, or may recover the same by legal process. (Statutes of 1867 and 1868, p. 379.)

To recapitulate, therefore, under Order 800, the party who would claim title to any of the lands thereunder, must show first that on March 8, 1866, he was in the actual *bona fide* possession of the lands by himself or tenants, or having been ousted from such possession, has recovered, or may recover the same by legal process; second, presentation to the Committee on Outside Lands of a description and diagram of the lands in which he claims an interest; third, have the same delineated on the map; fourth, show that all taxes for the five fiscal years preceding July 1, 1866, on the claim were paid; fifth, show payment of assessment on such lands for the lands appropriated to public use. The purpose of these requirements is as obvious as the language of the statute is express. It was to ascertain, settle, and expedite the settlement of title to lands in the City of San Francisco, and such has been the uniform spirit in which the Court has heretofore construed the provisions of this Act.

In regard to the first of the conditions· as we have thus recapitulated them, this Court in *Pickett* v. *Hastings,* 47 Cal. 285, construing a similar provision in the Van Ness Ordinance, say:

"The question as to whether he is entitled to the benefits
of the ordinance, depends upon the construction to be given
to the language of the ordinance, 'may be recovered by
legal process.' By the words 'legal process' is meant an ac-
tion brought in a Court of competent jurisdiction. The only
difficult matter for construction is the words 'may be re-
covered,' and the question arising upon those words, is
whether they import a right of recovery only, or a recovery in
fact. That is to say, whether the Van Ness Ordinance title
devolved upon the person who then possessed the right of
recovery, as against an intruder or trespasser, or whether it
vests in the person who, in fact, recovers the possession from
such intruder or trespasser. We are of opinion that those
words mean, when read with the other words of the section,
'shall be recovered.' The purpose of the ordinance as we con-
strue it was to give the Van Ness Ordinance title to those
who had already recovered the possession from an intruder
or trespasser, and to those who should thereafter recover the
possession from an intruder or trespasser. * * If this be the
proper construction of the ordinance, the Van Ness Ordinance
title has not vested in the plaintiff, and of course, he cannot
rely on it for a recovery in this action. The ordinance de-
clares in effect, that a person included in the fourth class,
who shall recover the possession of the lands from which he
was ousted, shall have the Van Ness Ordinance title, but does
not declare, nor can it be inferred therefrom, that he shall
receive that title, not only as the fruits, but also for the pur-
pose of such a recovery." (*McManus* v. *O'Sullivan*, 48 Cal.
18.)

In *Dupont* v. *Barstow*, 45 Cal. 452, the Court enforced
the necessity for the payment of the taxes and the assessment.

In *Clark* v. *San Francisco*, 53 Cal. 310, the Court held
that the party failing to have his claim delineated on the
map, and failing to pay taxes and assessments, had no claim
therein, as against the city.

In placing a proper construction upon this Ordinance, and
the Act of the Legislature confirming it, it should be borne
in mind that parties who would claim their benefit, had no
title to the land. It is not a case where an existing title is
made subject to statutory regulations provided in the public

interest, but it is the case where title can only come through compliance with the provisions of the statute itself.

Having no title in absence of compliance with the statute, none can be asserted in absence of compliance with its provisions. In this case the title to the land was primarily in the United States, and subsequently ceded to the city in trust for the uses and purposes expressed in the Act of Congress.

The benefit to be derived by complying with the terms of the ordinance and statute was not one to be forced upon him. It was one that it was his privilege to accept or reject. Under the provisions of the law he was required to manifest such acceptance or rejection at the time and in the manner prescribed, and having once done so expressly or by his silence, he is bound thereby. (*Damrell* v. *Meyer,* 40 Cal. 170.)

So we respectfully submit there is no law which will enable the appellant at this late day to reap the fruits of the superior diligence of the respondent. (*Marquez* v. *Frisbie,* 11 Otto, 476; *Vance* v. *Burbank,* 11 id. 570; *Sheaby* v. *True,* 45 Cal. 240; *Brown* v. *Brackett,* 21 Wall. 388; *Pico* v. *Spence,* 21 Cal. 511.)

The duty of ascertaining who were beneficiaries under the Act of Congress and the statutes was vested in the city authorities, and in the absence of fraud their determination is final and conclusive. (*French* v. *Ryan,* 93 U. S. R. 171; *Wilcox* v. *Jackson,* 13 Pet. 511.)

The only principle upon which it can be claimed that any one other than the grantee of the city can assert any title or interest in lands or moneys the titles to which were acquired under the ordinance and the statute, is upon the theory of actual or constructive fraud or trust. We presume it will hardly be claimed that it was any fraud on the part of the respondent to comply with the provisions of the statute, and it will hardly be claimed that the record shows any actual fraud. The law will never allow a constructive trust or fraud to arise, whereby its provisions or its policy will be frustrated. Thus, no trust will result in favor of a person advancing the purchase money of a ship registered in the name of any other, for the register, according to the policy of the law, is conclusive evidence of ownership, both at law and in equity. (*Ex parte Gallop,* 15 Vesey, 68; *Ex parte Stoughton,* 17 id. 251; *Slater* v. *Willis,* 1 Bevan, 354.)

In any view, therefore, that may be taken of the matter, whether upon the letter of the statute, the policy of the statute, or the principles of the general law, we submit that the appellant shows no title to any of the lands, or the proceeds of any of the lands mentioned in the record in this case.

MYRICK, J.:

This is an action for money had and received, and proceeds upon the theory that the defendant has in his possession money which belongs to the plaintiff.

The controversy grows out of the facts that on June 5, 1861, the defendant, then the claimant of a certain tract of land called the Donahue tract, containing 296 acres of what are known as the outside lands of the city and county of San Francisco, conveyed by deed of grant, bargain and sale to one Butters, an undivided interest therein equal to ten acres. The defendant also conveyed some other interest in the tract to other individuals. After the passage of the Act of Congress of March 8, 1866, relating to the outside lands, and the appropriate State legislation, Donahue caused the Donahue tract to be delineated upon the map of the outside lands, and paid all the necessary taxes and assessments. Afterwards a part of this tract was taken for Golden Gate Park, and an award made for the part so taken. Donahue demanded the amount of the award, and received from the proper officer a part of it, on the receipt of which he executed to the city a deed for all that part of the Donahue tract taken for the park. The amount retained by the officer—some twenty thousand dollars or twenty-two thousand dollars—was retained by him for the purpose of paying the shares of the vendees of Donahue other than Butters. The names of those other vendees appeared on the map. Butters' name did not, and the officer knowing nothing of any claim on his part, paid, as is contended by the plaintiff, the portion of the award corresponding to the Butter's interest, to the defendant. Neither Butters nor any of his grantees, appear ever to have had actual possession of any part of the land, nor to have paid any part of the taxes or assessments, nor to have had anything to do' with the delineation of the claim upon the map. The first that seems to have been heard of that interest since the defendant's

deed in 1861, was the demand made on the defendant shortly before the commencement of this action, by the plaintiff, who had, by mense conveyances, succeeded to one half of Butters' rights, for that portion of the award corresponding to the interest held by him.

While it is not pretended on the part of the plaintiff that Butters or any of his grantees ever, personally, complied with any of the requirements of the legislation relating to the outside lands, yet it is contended that by reason of the relation existing between them and the grantor, defendant, the compliance by the latter with those requirements, made, as it is claimed, in furtherance of their common title, inured to the benefit of his vendees.

We cannot accede to that proposition. Order No. 800 required action upon the part of each and every person "having or claiming any interest in any portion" of the lands; such action was required to be had by himself or some one for and on his behalf. For the *purposes of such action*, the relation of tenants in common did not exist; that relationship may have existed in the ownership of the lands, but in seeking the compensation provided for in the order, each was to act for himself. It does not appear that Donahue took upon himself to act for plaintiff; their relationship, as tenants in common, did not cast upon him that duty; therefore it does not appear that by any agreement, express or implied, or by any obligation, the moneys received by Donahue were received, in whole or in part, for or on account of plaintiff or his interest. It does not appear that the plaintiff had by his acts placed himself in such a position as that he could have demanded of the city and county or its officers any payment for his interest in the lands. If so—if the city and county, in consequence of his omission, was under no obligation to make compensation to him—how can Donahue be held to have received to the use of plaintiff a portion of the moneys claimed and received from the city and county for his own interests on his individual application ?

Order affirmed.

McKEE, J., and MORRISON, C. J., and SHARPSTEIN, THORNTON, McKINSTRY, and ROSS, JJ., concurred.